# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAWUD MUHAMMAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO. N14C-12-275 AML |
| | ) | |
| WARDEN DAVID PIERCE, | ) | |
| MAJOR JEFFREY A. CARROTHERS, | ) | |
| SUPPORT SERVICES MANAGER | ) | TRIAL BY JURY OF |
| TONYA SMITH, SUPPORT SERVICES | ) | TWELVE DEMANDED |
| EMPLOYEE CAROL POWELL, and | ) | |
| CORRECTIONAL OFFICER RONALD | ) | |
| HOLCOMB, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: February 15, 2017
Decided: May 25, 2017

## ORDER

**Defendants' Motion for Summary Judgment: GRANTED**

1. The plaintiff, an inmate at a Delaware prison, contends he was fired from his job at the prison commissary in violation of the Delaware Whistleblowers' Protection Act (the "Act"). That law prohibits an employer from discharging, threatening, or otherwise disciplining an employee "whistleblower." The question in this case, quite simply, is whether the named defendants, who worked in various roles in the prison, were the plaintiff's employer within the meaning of the Act. I conclude the defendants were not the plaintiff's employer and I therefore grant the defendants' motion for summary judgment.

## FACTUAL BACKGROUND

2.      Except as otherwise noted, the following facts are not disputed. The plaintiff, Dawud Muhammad, is an inmate at James T. Vaughn Correctional Center ("JTVCC"). Muhammad was employed at the prison commissary until he was fired after he was found in possession of commissary items for which he could not provide proof of purchase. The defendants are or were staff members at JTVCC. Defendants David Pierce and Jeffrey A. Carrothers were the warden and security superintendent, respectively, at JTVCC during the events in question.[1] Defendants Tonya Smith, Carol Powell, and Ronald Holcomb all worked in various capacities in the commissary (referred to collectively with Warden Pierce and Mr. Carrothers, "Defendants").[2]

3.      In approximately May 2014, the Delaware State Police ("DSP") initiated an investigation into the commissary's operation at JTVCC and specifically into alleged improprieties by staff members.[3] Muhammad contends he cooperated in the investigation and was interviewed by the DSP. There is a factual dispute as to whether any of Defendants knew Muhammad cooperated in the investigation. For purposes of the pending motion, I will assume Defendants knew

---

[1] Opening Br. 4 & Ex. A.
[2] *Id.* at Ex. B-D.
[3] *Id.* at Ex. A, 3.

2

about Muhammad's involvement. The investigation did not lead to any charges or disciplinary action against anyone employed at JTVCC.[4]

4.    On August 26, 2014, Department of Correction ("DOC") officers conducted a search of Muhammad's cell.[5] The record supports an inference that the search was not at random, but instead was targeted to Muhammad's cell particularly. During the search, DOC officers found several food items for which Muhammad could not provide commissary receipts.[6] Possession of commissary items without proof of purchase is a violation of prison rules. As a result of this violation, Muhammad was suspended from his jobs at the commissary and the JTVCC gym.[7] Muhammad ultimately regained his job at the gym, though not at the commissary.

5.    Muhammad filed this action on December 22, 2014, alleging he was terminated from his employment in violation of the Act. Specifically, Muhammad contends his cell was searched in retaliation for his cooperation with the investigation of commissary staff and that the contraband found in his cell was a pretext for his termination from his employment. After discovery, Defendants moved for summary judgment. This is my decision on that motion after briefing and argument.

---

[4] *Id.* at Ex. A.
[5] *Id.* at Ex. E.
[6] *Id.*
[7] *Id.*

## ANALYSIS

6.      Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[9] The Court will accept "as established all undisputed factual assertions . . . and accept the non-movant's version of any disputed facts. From those accepted facts[,] the [C]ourt will draw all rational inferences which favor the non-moving party."[10] A party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists.[11] If the movant makes such a showing, the burden then shifts to the nonmoving party to submit sufficient evidence to show that a genuine factual issue, material to the outcome of the case, precludes judgment before trial.[12]

7.      Defendants contend they are entitled to summary judgment because they were not Muhammad's "employer" within the meaning of the Act and

---

[8] Super. Ct. Civ. R. 56(c).
[9] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).
[10] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan. 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).
[11] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).
[12] *Id.*; *see also Brzoska*, 668 A.2d at 1363.

4

therefore cannot be held liable under that Act. They alternatively contend they are shielded from suit by qualified immunity. Finally, Defendants raised for the first time at oral argument a third basis for judgment as a matter of law: that Muhammad is not an "employee" within the meaning of the Act. Muhammad, on the other hand, argues that disputed issues of material fact remain and require presentation of this case to a jury. Those disputed facts relate to Defendants' knowledge of Muhammad's participation in the investigation, the reasons Muhammad's cell was searched, whether the items discovered during the search were a proper basis for Muhammad's termination, and the reason Muhammad was terminated from the commissary.

8.    Under the Act, an employer may not

> discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment . . . [b]ecause the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false . . . [13]

The Act defines "employer" as "any person, . . . corporation or other business entity, including any department, agency, . . . or authority . . . in state, county or

---

[13] 19 *Del. C.* § 1703(1).

municipal government. One shall employ another if services are performed for wages or under any contract of hire, written or oral, express or implied."[14]

9. Defendants argue that, even if Muhammad's cell was searched or he was terminated due to his participation in the DSP investigation, the individual Defendants were not Muhammad's employer and therefore are not liable to him under the Act. Defendants' argument is supported by several previous decisions of this Court.[15] In each such case, this Court dismissed claims brought under the Act against agents of the plaintiff's employer. In those cases, the Court concluded those individual defendants were not the plaintiff's employer, even though those individuals may have supervised, or been involved in a decision to fire, the plaintiff.[16]

10. As in those cases, Defendants were not Muhammad's employer. If he was an "employee" under Delaware law,[17] Muhammad was employed by the State through DOC. Although, as Muhammad argues, the Act includes a "person"

---

[14] *Id.* § 1702(2).

[15] *See Stoppel v. Henry*, 2011 WL 55911, at \*4-5 (Del. Super. Jan. 4, 2011); *Meltzer v. City of Wilm.*, 2008 WL 4899230, at \*1-2 (Del. Super. Aug. 6, 2008); *Postell v. Eggers*, 2008 WL 134830, at \*5 (Jan. 15, 2008).

[16] *Stoppel*, 2011 WL 55911, at \*4 ("Neither of the moving defendants paid Stoppel's wages or contracted for her hire in their individual capacities. While the moving defendants' supervisory roles may have entailed ordering Stoppel to 'perform services' and otherwise acting on behalf of Stoppel's employer (*i.e.*, DHSS), such activities do not confer employer status under the Act."); *see also Meltzer*, 2008 WL 4899230, at \*1-2.

[17] *See Walls v. Dept. of Corr.*, 663 A.2d 488 (Table) (Del. 1995) (concluding an inmate is not an "employee" under the Minimum Wage Act of Title 19 of the Delaware Code); *Eaton v. Coupe*, 2017 WL 626614, at \*4 (Del. Super. Feb. 14, 2017) (extending *Walls* to the meaning of "employee" in the Delaware Whistleblowers' Protection Act).

within the definition of "employer," that person must employ another "for wages or under [a] contract of hire . . . ."[18] Defendants may have made decisions regarding Muhammad's hiring and firing, and may have supervised him while he was employed, but they did not pay Muhammad's wages or contract for his services. Muhammad's claim under the Act, if any, lies solely against his employer, not the agents of his employer. None of the disputed factual issues Muhammad identifies is material to this interpretation of the Act and those issues therefore do not preclude Defendants' motion.

11.     Having concluded that Muhammad's claim against Defendants does not state a cause of action under the Act, I need not reach the alternative arguments raised in the Motion.[19]

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED. IT IS SO ORDERED.**

_____
Abigail M. LeGrow, Judge

Original to Prothonotary
cc:     Dawud Muhammad, *pro se* (SBI # 00158650)
        Stuart B. Drowos, Deputy Attorney General

---

[18] 19 *Del. C.* § 1702(2).

[19] I note for the record, however, that Defendants' argument regarding Muhammad's status as an "employee," which was raised for the first time at oral argument, was not timely raised and therefore was barred. *See, e.g. Solway v. Kent Diagnostic Radiology Assoc., P.A.*, 2014 WL 948318, at *2 (Del. Super. Feb. 26, 2014); *Paikin v. Vigilant Ins. Co.*, 2013 WL 5488454, at *3 n.12 (Del. Super. Oct. 1, 2013).